IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GREGORY SMITH AND JENNIFER SMITH,**<br>          **Plaintiffs,**<br><br>          v.<br><br>**STATE FARM FIRE AND CASUALTY COMPANY,**<br>          **Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO. 15-670** |

# MEMORANDUM OPINION

Plaintiffs Gregory and Jennifer Smith ("the Smiths") bring this action against Defendant State Farm Fire and Casualty Company ("State Farm") alleging breach of contract and bad faith in insurance dealings arising from State Farm's partial denial of coverage of the Smiths' homeowner's insurance policy claim.  Before the Court is State Farm's Motion for Summary Judgment on the ground that Count I (breach of contract) is barred by the policy's one-year suit limitations clause, and Count II (bad faith) has not been proven by clear and convincing evidence.

**I.      BACKGROUND**

Some time prior to May 15, 2012, the Smiths commissioned Certified Master Inspector Craig D. Tillman ("Tillman") to perform an inspection of their house for potential water damage. *See* Joint Appendix ("JA") 243, 287-89.  The Smiths had not observed any issues within their home, but engaged Tillman's services because Mr. Smith had learned that his neighbors were having issues with water damage.  JA 286.  On or around May 15-16, 2012, Tillman conducted a visual inspection of the entire home and took moisture readings of the exterior walls, recording

1

his findings in a written report that included twenty-eight color photographs with accompanying notations ("the report").  JA 247.

In his review of the Smiths' home, Tillman observed numerous design flaws, installation deficiencies, and defects around the home, including: missing kick out flashings; exposed sheathing; lack of proper sealants at windows; dissimilar materials at trim points; no deck ledger flashing; no drainage screeds; no expansion joints; improper use of Tyvek house wrap on stucco; incorrect setting of the chase caps on the chimney; and a lack of the appropriate slant from the flue penetrations.  JA 246, 260.  Tillman took photos of the cracking, staining, extensive rot, water entry into the basement and living room, saturated sheathing, and elevated moisture readings around both the interior and exterior of the home.  JA 242-62.

Effective April 23, 2013, State Farm issued a homeowners policy of insurance to the Smiths.  JA 143-82.  Mr. Smith testified at his deposition that it was the receipt[1] of Tillman's report that prompted him to file an insurance claim with State Farm on November 25, 2013.[2]  JA 288-90.  A few hours after the claim was received by State Farm, agent Stephen Revak ("Revak") called and spoke with Mr. Smith about the circumstances of the damage.  JA 209.  Mr. Smith explained that water had gotten behind the home's stucco and rotted out the sheathing, that it was visible in the attic, and that he had "been dealing with the issue for a few months now."  *Id*. at 209-10.  Revak informed Mr. Smith that rot, deterioration, workmanship and latent defects would not be covered by the policy.  *Id.*  An inspection by a State Farm agent was scheduled for two days later.  *Id.* at 209.

---

[1] Neither party has offered the exact date on which the Smiths received the report, despite the conspicuous eighteen-month lag between Tillman's inspection and the Smiths' filing of the claim.

[2] The Smiths reverse course in their papers and deny that the report prompted Mr. Smith to file a claim with State Farm.  Opp'n at 5; Plaintiff's Statement of Disputed Material Facts ("Pl. Facts") ¶ 26.

On November 27, 2013, State Farm agent Jamie Sabatini ("Sabatini") inspected the home with Mr. Smith. *Id.* at 206. Sabatini indicated that, again, there would be no coverage for stucco replacement or rotted sheathing, but agreed to review the request for coverage of water damage to the drywall, trim, and insulation. *Id.* at 208-09. Twenty minutes after the inspection, State Farm reassigned the handling of the Smiths' claim to agent Bradley Ziemer ("Ziemer"), who introduced himself to Mr. Smith that same day. *Id.* at 208. Ziemer noted in the State Farm claim log that he attempted to make contact with the Smiths on December 6 and 13, 2013, to schedule another inspection of the home; a second inspection was performed on December 19, 2013, once a repair contractor had removed much of the stucco siding. *Id.* at 207-08. Ziemer noted that there was evidence of rot and deterioration to the sheathing in some areas, that there was a small amount of water damage to the interior drywall, and that there was water staining around the windows and gutters. *Id.* at 207.

By January 14, 2014, Ziemer had completed a draft of the estimate for interior damages. Mr. Smith subsequently submitted a Sworn Statement in Proof of Loss to State Farm by uploading it on January 29, 2014. JA 212. On February 25, 2014, Ziemer reviewed the Sworn Statement in Proof of Loss. *Id.* at 205. On March 5, 2014, Ziemer made notations in the claim log that he was editing and reviewing a partial denial letter to be sent to the Smiths pending approval by another State Farm agent. *Id.* On March 7, 2014, State Farm agent Carl Fisher reviewed the letter and agreed with Ziemer's conclusion regarding coverage. *Id.*

By letter dated March 3, 2014, State Farm communicated the denial of coverage for replacement of the stucco, rotted sheathing, and moldy insulation to the Smiths. JA 219-23.

## II. LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), is appropriate "where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted). The moving party must persuade the Court that, "even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). To prevail on a motion for summary judgment, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)) (alteration in original).

## III. DISCUSSION

### A. Breach of Contract

State Farm moves for summary judgment on Count I, breach of contract, on the ground that the claim is barred by the policy's suit limitation clause that mandates a suit be instituted against State Farm "within one year after the date of loss or damage." JA 161. State Farm alleges that the relevant damage to the home occurred on or about May 15, 2012, when Tillman discovered moisture, rot, and manufacturing defects. Mtn. at 5. The Smiths contend that the date of loss occurred on or about November 20, 2013, just before they reported the claim to State Farm. *Id.* Based on the arguments, the date of loss could affect the outcome of the case and, accordingly, the Smiths argue that there is a genuine issue of material fact that precludes summary judgment. Opp'n at 4. To prevail, however, the Smith must "go beyond the pleadings

4

and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (citing Fed. R. Civ. P. 56(e)).

The Smiths have been unable to produce any evidence to support their assertion that the loss occurred on or about November 20, 2013. Mr. Smith testified at his deposition that he had "no idea" when the damage occurred, although when he initially contacted State Farm he stated that "he's been dealing with the [water] issue for a few months now." JA 209, 290. The record is silent as to Mrs. Smith's knowledge. The report that the Smiths themselves commissioned, compiled by Craig Tillman around May 15-16, 2012, contains evidence that the contested damage had already occurred by that point. Notwithstanding the Smiths' insistence that Tillman only detected moisture, the report itself entirely contradicts that claim. Opp'n. at 4-5. Tillman's notes describe "saturated sheathing," "interior wet areas," "water entry into the basement," "rot . . . wet below transition . . . wet and rot below chimney hips," "wet readings," "windows are all leaking," "[t]he chimneys appear to be rotting top to bottom enough to warrant complete stripping of the stucco," "[r]otted wood and framing should be replaced, and the chimneys properly rebuilt and clad," "extensive rot found . . . and suspected to be found most of the way down," "cracking, staining," and "saturated and totally rotted areas." JA 242-62. These descriptions are accompanied by corroborating photos taken on or about May 16, 2012. *Id*.

An issue of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 545 (3d Cir. 2012), (citing *Anderson*, 477 U.S. at 257). No reasonable jury could return a verdict for the Smiths in light of the Tillman report and the dearth of evidence that the damage occurred

on or about November 20, 2013.  Thus, there is no *genuine* dispute that the damage occurred, at the very latest, on or about May 15, 2012.

In general, limitations on the time to bring suit under an insurance contract are "both valid and reasonable." *Kramer v. State Farm Fire and Casualty Ins. Co.*, 412 Pa.Super. 227 (1992); *see also Lardas v. Underwriters Ins. Co.*, 426 Pa. 47 (1967).  A one-year limitation has been held to be reasonable.  *See Fennell v. Nationwide Mut. Fire Ins. Co.*, 412 Pa.Super. 534 (1992).  Here, the policy contained a limitation clause barring suit against State Farm outside of one year after the date of loss or damage.  JA 161.  Accordingly, the Smiths were required to file suit no later than May 15, 2013 – one year after the date of loss.   The Smiths did not file a Writ of Summons until November 14, 2014, and a complaint was not filed until January 16, 2015.  JA 409-10.  Both events fall outside the one year limitations period.

Accordingly, the breach of contract claim is barred by the one-year limitations clause and summary judgment shall be granted in favor of State Farm as to Count I.

### B.  Bad Faith

Under Count II, the Smiths assert State Farm engaged in bad faith in insurance dealings by refusing to honor their claim to replace the exterior insulation of their home, denying coverage without reasonable basis, and knowingly or recklessly disregarding its lack of a reasonable basis for denying the claim.  *See* Complaint ¶¶ 27-30.  State Farm moves for summary judgment on the ground that the Smiths have failed to offer clear and convincing evidence that State Farm acted in bad faith.  Mtn. at 15.

To prove bad faith, a plaintiff "must show by clear and convincing evidence that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and, (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Condio v. Erie Ins.*

*Exchange*, 899 A.2d 1136, 1143 (Pa. Super. 2006).  A claim of bad faith must be proved by the heightened standard of "clear and convincing evidence," even at the summary judgment stage. *Terletsky v. Prudential Property & Casualty Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994); *see also Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir. 1994).  Bad faith claims are "fact specific and depend on the conduct of the insurer *vis à vis* the insured." *Id.*  To defeat a claim of bad faith, State Farm need not show that its conclusion was correct, rather, it must establish that it had a reasonable basis for its decision to deny benefits.  *See J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).

Pennsylvania's statute prohibiting bad faith in insurance dealings does not define "bad faith."  42 Pa.C.S.A. § 8371.  However, Pennsylvania courts have held that the term encompasses "frivolous or unfounded refusal to pay the proceeds of a policy [where] such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will. . . ."  *Terletsky*, 649 A.2d at 688.

The Smiths assert there is clear and convincing evidence of bad faith based on State Farm's: unreasonable delay in handling a claim; failure to communicate with the Smiths; inadequate investigation; frivolous refusal to pay the claim; misrepresentation of policy provisions; and violating standards for proper investigation of claims.  Opp'n at 6; *see e.g.*, *Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005) (Pennsylvania's bad faith statute is the means of "redressing unreasonable delays" by insurers); *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 at n.9 (3d Cir. 1999) (an insurer's lack of investigation, frivolous or unfounded refusal to pay, or failure to communicate may all constitute bad faith); *Smith v. Allstate Ins. Co.*, 904 F.Supp.2d 515, 524 (W.D.Pa. 2012) (same).

The Smiths contend that State Farm agent Jamie Sabatini intended to approve coverage to replace the damaged insulation and sheathing, but that State Farm replaced him with another agent when it discovered the value of the claim. Opp'n at 8. They cite no evidence for this conclusion, which assumes that State Farm knew the value of the claim twenty minutes after the first inspection, when it chose to reassign the claim to a different agent. JA 208. The Smiths also fail to cite any evidence in support of the allegations that "Ziemer clearly believed it was okey [sic] to tell 'little lies,'" that bad faith conduct was "sanctioned and orchestrated" by State Farm, or that Sabatini "believed coverage for insulation was due." Opp'n at 15.

The Smiths complain that it took Ziemer seven days to record the inspection he performed, but fail to explain why seven days is an unreasonable period or cite any cases that would support such a conclusion. Opp'n at 9. The Smiths also object to the amount of time Ziemer took to prepare and send an estimate of damages to them, which they calculate took approximately eighty-two days. Opp'n at 9. The claim log indicates that State Farm continued to work on the claim from the time of the inspection in December to the time the Smiths received the partial denial letter in March. Ziemer inspected the home on December 19, 2013. JA 207. The case notes maintained by State Farm indicate that on December 27, 2013, Ziemer informed Mr. Smith that he was waiting to determine the stucco damages until "subsequent elevations were exposed. . . ." JA 207, 375. Ziemer completed the initial calculations of coverage by January 14, 2014, and made notes that he was awaiting a response from "TM" to complete the estimate and contact the Smiths. JA 206. Mr. Smith sent State Farm a Sworn Statement in Proof of Loss dated January 28, 2014, which Ziemer recorded in the claim log on February 25, 2014. JA 205. On March 5, 7, and 11, 2014, Ziemer made notations that he was reviewing a partial denial letter; another agent also reviewed the letter and Ziemer's conclusion. *Id.* The letter was

transmitted less than a week later.  *Id.*  Meanwhile, the Smiths present no evidence that eighty-two days to resolve a claim of this scale is an unreasonable period of time.  *Cf. Wood v. Allstate Ins. Co.*, 1997 WL 602796 (E.D.Pa. 1997) (finding bad faith in handling of plaintiff's claim where the adjuster took no action for almost two years).  The Smiths also fail to explain the significance of the date of the denial letter, which falls a few days before it was actually communicated, or how backdating the letter would constitute bad faith.  Opp'n at 15; JA 205.

The Smiths further allege that State Farm's failure to communicate with them every forty-five days constitutes evidence of bad faith.  Opp'n at 10.  State Farm is required by the Pennsylvania Unfair Insurance Practices Act, § 146.6, to provide updates on the status of a claim every forty-five days; it failed to do so in this case.  However, "mere negligence" does not constitute bad faith by an insurer – the conduct must be motivated by self-interest or ill will.  *See Terletsky*, 437 Pa.Super. at 125.  The Smiths' own characterization as having been "forgotten" by State Farm suggests laxity rather than malice, and bad faith cannot be "merely insinuated."  *Id.*; Opp'n at 10.

The Smiths reiterate many of the same complaints in their argument that State Farm conducted an inadequate investigation.  Opp'n at 14.  In this case, State Farm sent two separate agents – Sabatini and Ziemer – to inspect the property on separate dates.  The notations made by the agents indicate consistent work on the claim, including calculations of costs and detailed descriptions of the damage to the home.  JA 205-08.  Although the Smiths strongly argue that the investigation was inadequate, they have not offered evidence beyond the pleadings or briefs supporting that proposition.  Such "bare assertions of wrongdoing will not suffice at this stage." *Weinberg v. Nationwide Cas. Ins. Co.*, 949 F.Supp.2d 588, 598 (E.D.Pa. 2013); *cf. Corch Const. Co. v. Assur. Co. of America*, 2003 WL 23473924 (Pa. Commw. Ct. 2003) (finding an

inadequate investigation in part where the photographs taken by the insurer's investigator were "missing from the file and their whereabouts could not be explained").

Finally, the Smiths assert that State Farm unreasonably interpreted and misrepresented the insurance policy provisions. Opp'n at 12-15. The Smiths' disagreement with State Farm's conclusion as to the policy's resulting loss language is, at bottom, a contractual dispute. However, in a bad faith context, the sole issue for the Court to determine is whether State Farm's interpretation was unreasonable, not whether its ultimate decision was correct. *Condio*, 899 A.2d at 1143 ("it is not bad faith to take a stand with a reasonable basis or to 'aggressively investigate and protect its interests' in the normal course of litigation") (citing *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. 1999)).

The relevant portions of the policy are as follows:

> 1. [State Farm does] not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately cause by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . .
> > (g) wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown . . .
> > (i) mold, fungus or wet or dry rot . . .
>
> However, we do insure for any resulting loss from items a. through m. *unless the resulting loss is itself a Loss Not Insured by this Section.*
>
> 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. . .
> > (c) Water Damage, meaning:
> > > (1) flood, surface water, waves tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not . . .

> 3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss, or (b) occur before, at the same time, or after the loss or any other cause of the loss . . .
> 
>     (b) defect, weakness, inadequacy fault or unsoundness in:
>         (1) planning, zoning development, surveying, sitting
>         (2) design, specifications, workmanship, construction, grading, compaction,
>         (3) materials used in construction or repair, or
>         (4) maintenance.
> 
> However, we do insure for any resulting loss from items a., b. and c. *unless the resulting loss is itself a Loss Not Insured by this Section.*

JA 156-58 (emphasis added).

State Farm's denial of coverage letter offers insight into its considerations and decision-making process. JA 219-23. In it, Ziemer wrote that "[w]ater had been penetrating the stucco finish of the home and resulted in rot and deterioration to the sheathing. This condition was caused by a latent defect or workmanship issue in the application of the stucco. . . . State Farm is not able to extend coverage or any payments for the replacement of the stucco for any rotted sheathing found below the stucco or for any insulation which is replaced as a result of mold." *Id.* State Farm's reliance on the ensuing loss exclusion was not unreasonable because it is "at least arguable" that the stucco, rotted sheathing, and moldy insulation are not covered by the ensuing loss provisions, because they themselves are losses not insured. *Victoria Ins. Co. v. Ren*, 2008 WL 2371850 (E.D.Pa. June 9, 2008). The Smiths' argument to the contrary leaves out "an important caveat to the 'ensuing loss' provision . . . the 'ensuing loss' itself must not be specifically excluded elsewhere in the policy." *Smith v. Westfield Ins. Co.*, 2007 WL 1740816 at *3 (E.D.Pa. June 15, 2007); *see also Banks v. Allstate Ins. Co.*, 1993 WL 40113 (E.D.Pa. Feb.

12, 1993) (holding that the "ensuing loss" clause does not provide coverage for a loss that is specifically excluded elsewhere in the policy).

The Smiths' assertion that there is no documentation that State Farm "ever considered providing coverage under the ensuing loss provision" is an attempt to shift its prima facie burden to State Farm, rather than demonstrate bad faith by clear and convincing evidence. Opp'n at 12. Further, the Smiths have failed to produce any "evidence on industry standards relating to the need to (1) train claims adjusters on legal interpretations of policy terms, or (2) provide adjusters with guidance as to when they should seek guidance (i.e., legal research) from the available staff attorneys" from which this Court could conclude that State Farm's actions were unreasonable. *Mohney v. Am. Gen. Life Ins. Co.*, 116 A.3d 1123, 1136 (Pa. Super. 2015), *reargument denied* (June 30, 2015). Moreover, State Farm's denial letter establishes a reasonable basis for its decision by detailing the damage to the property, the relevant portions of the policy provisions, a summary of communication with the Smiths, and the ultimate reason for the denial. JA 219-223.

Pennsylvania courts have declined to recognized bad faith "where the insurer made a reasonable legal conclusion based on an area of the law that is uncertain or in flux." *Condio*, 899 A.2d at 1143. The Smiths have not shown by clear and convincing evidence that State Farm lacked a reasonable basis for denying benefits under the policy and, even if they had met that burden, they failed to demonstrate that State Farm "knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id*. Accordingly, summary judgment is granted in favor of State Farm as to Count II (bad faith).

An appropriate order follows.

                                                  **BY THE COURT:**
                                                  **/S/WENDY BEETLESTONE, J.**
                                                  _____
                                                  **WENDY BEETLESTONE, J.**